IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| ROLLAND EARL CONNER, ) | CIVIL ACTION 4:10-cv-2905-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | ORDER |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

**I. PROCEDURAL HISTORY**

Rolland Earl Conner ("Plaintiff" or "claimant") filed an application for DIB on August 13, 2007, alleging inability to work since June 21, 2007, due to a subdural hematoma and fluid on the brain. His applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was held on March 19, 2010, before an Administrative Law Judge ("ALJ") by way of video teleconferencing. The Plaintiff appeared and testified as did a

vocational expert (VE). The ALJ issued an unfavorable decision on April 16, 2010. (Tr. 11-21). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on November 9, 2010.

## II. FACTUAL BACKGROUND

The Plaintiff was born on February 14, 1956, and was 54 years old at the time of the hearing before the ALJ. Plaintiff has three years of college education and past work experience as a grounds maintenance worker, maintenance worker, and lawn care worker.

## III. DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

(1) The ALJ failed to consider the combined effect of Mr. Conner's multiple impairments;

(2) The ALJ improperly weighed opinion evidence; and

(3). The ALJ improperly relied on the medical-vocational guidelines (GRIDS).

(Plaintiff's brief).

In the decision of April 16, 2010, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial activity since June 21, 2007, the alleged onset date (20 CFR 404.1571 *et. seq*.).

3. The claimant has the following severe impairments: seizure disorder, neuropathic pain, cognitive deficit, and depression (20 CFR §§ 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to read at the ninth grade level, spell at the high school level, and do arithmetic at the seventh grade level. The claimant can sit for 6 hours in an 8-hour day, with normal breaks and stand and walk for 6 hours in an 8-hour day, with normal breaks. He can lift 20 pounds occasionally and 10 pounds frequently. The claimant can occasionally climb ramps and stairs but cannot climb ropes, ladders or scaffolds. He can perform other postural activities frequently. He must avoid; unprotected heights; hazards; open flames; and sharp moving edges, not including more simple objects, such as kitchen knives. Additionally, the claimant is limited to simple, routine and repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on February 14, 1956, and was 51 years old, which is defines as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in

>           significant numbers in the national economy that the claimant
>           can perform (20 CFR 404.1569 and 404.1569(a)).
>
>    11.    The claimant has not been under a disability, as defined in the
>           Social Security Act, from June 21, 2007, through the date of
>           this decision (20 CFR 404.1520(g)).

(Tr. 11-20).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the

claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. ARGUMENTS AND ANALYSIS

### Combination of impairments

Plaintiff argues "[t]he ALJ failed to consider the combined effect of Mr. Conner's multiple severe impairments." (Plaintiff's brief, p. 6). Plaintiff asserts the ALJ provided no analysis of the combined effect of Mr. Conner's multiple impairments failing to comply with the mandate of Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). Plaintiff contends that "[t]he ALJ made a finding of law that Mr. Conner did not have an impairment or combination of impairments that met or medically equaled a listing. The ALJ then proceeded through each of Mr. Conner's severe impairments and found that none rose to listing level." (Id.). Defendant argues that the ALJ considered Plaintiff's impairments individually and in combination.

The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock, 483 F.2d at 775. In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination ...." Green v. Chater, 1995 U.S.App. LEXIS 21970, *7, 1995 WL 478032 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider

6

the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). But see, Martise v. Astrue, 641 F.3d 909, 924 (8th Cir. 2011); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); and, Gooch v. Secretary of Health & Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

In Walker, the Fourth Circuit remanded plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. See Walker, 889 F.2d at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. See Id. The ALJ found that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4 . Walker, 889 F.2d at 49. The Fourth Circuit held that the ALJ failed to adequately consider and explain his finding because he did not analyze or explain his evaluation of the cumulative effect of the claimant's impairments. See Id. at 49-50.

The ALJ in this action found that plaintiff has the following severe impairments: seizure disorder, neuropathic pain, cognitive deficit, and depression, but that he did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart. P, Regulation No. 4. (Tr.13-15). The ALJ also found that the record documents the Plaintiff reported blurred vision but a November 2007 eye examination revealed Plaintiff had a corrected visual acuity of 20/20 bilaterally, as well as normal visual fields, muscle function, binocular vision, and color perception." (Tr. 13). The ALJ also found that Ben P. Clark, DO, found that Plaintiff's visual function appeared unimpaired even though he needed bifocal or reading glasses. Further,

7

Plaintiff's treating physician noted in August 2007, that while Plaintiff complained of blurred vision, he was adequately able to read the insurance forms. (Tr. 14). Therefore, the ALJ found "[t]his condition has been assessed as a non-severe impairments, as it no more than minimally affects the claimant's ability to perform work-related activity." Id.

In this case, the ALJ found at step three of the sequential evaluation that Plaintiff "did not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (Tr. 14). Unlike the ALJ in Walker and its progeny, the ALJ in this action discussed each of Plaintiff's impairments and performed a detailed RFC analysis that demonstrates the ALJ considered Plaintiff's impairments in combination. The ALJ's decision accounted for Plaintiff's combination of impairments in determining that Plaintiff had the RFC to perform limited light work with the following restrictions: "the claimant can sit for 6 hours in an 8-hour day, with normal breaks and stand and walk for 6 hours in an 8-hour day, with normal breaks. He can lift 20 pounds occasionally and 10 pounds frequently. The claimant can occasionally climb ramps and stairs but cannot climb ropes, ladders or scaffolds. He can perform other postural activities frequently. He must avoid: unprotected heights; hazards; open flames; and sharp moving edges, not including more simple objects, such as kitchen knives. Additionally, the claimant is limited to simple, routine and repetitive tasks." (Tr. 15). In determining the RFC, the ALJ states that he considered the entire record and all the symptoms. (Tr. 15). In finding that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of one of the listed impairments, he discussed in detail Plaintiff's seizure disorder and evaluated it under Listings 11.02

and 11.03, the neuropathic pain under Listing 11.04, and Plaintiff's mental impairments "considered singly and in combination" under Listings 12.02 and 12.04. (Tr. 14).

The court finds the ALJ's discussion and analysis to be sufficient to demonstrate that he considered Plaintiff's impairments in combination. The decision includes sufficient findings regarding the combination of his impairments for the court to properly review the ALJ's conclusion on this issue. See Thornsberry v. Astrue, C/A No. 4:08–4075–HMH–TER, 2010 WL 146483, *5 (D.S.C. Jan.12, 2010) (unpublished) ( "Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."). Though a more thorough analysis may be required in some cases, Plaintiff fails to demonstrate how any additional discussion could have produced a different result. Plaintiff does not point to any medical evidence which could demonstrate that the ALJ's analysis was not supported by substantial evidence. Thus, it does not appear that the ALJ committed error, and if she did, the error was harmless. See Robinson v. Astrue, 2011 WL 4368396 (D.S.C. Sept. 19, 2011)

**Opinion Evidence**

Plaintiff argues the ALJ failed to properly evaluate the opinion evidence. Specifically, Plaintiff asserts the ALJ gave little weight to the opinion of his treating physician, Dr. Benjamin, who provided a function-related finding he could not carry on any type of manual activity or drive. Plaintiff argues that it was error for the ALJ to accept the opinion of Dr. Takacs who stated that he tried to convince Plaintiff to go back to work. Plaintiff argues that "[h]ad the ALJ properly

contrasted the treating relationship between Drs. Benjamin and Takacs, the regulations make clear that the findings and judgments contained in Dr. Benjamin's notes deserve significantly more weight." (Plaintiff's brief, p. 8).

Defendant argues that the ALJ properly evaluated the medical opinion evidence and rejected Plaintiff's argument that the ALJ erred by giving more weight to Dr. Takacs' opinion than to Dr. Benjamin's. Defendant argues that the ALJ correctly declined to give Dr. Takacs' opinion or Dr. Benjamin's opinion controlling weight but properly weighed their opinions in light of the entire record. Defendant argues that both opinions were conclusory and the ALJ gave valid reasons for giving more weight to Dr. Takacs' opinion. Defendant asserts that "Dr. Benjamin's opinion that Plaintiff was unable to 'carry on any kind of manual activity' was not inconsistent with the ALJ's finding that Plaintiff was able to perform the jobs of machine tender, ticket seller, and inspector, which did not involve manual labor." (Def.'s brief, p. 16).

The opinion of a physician will be given controlling weight if it is supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d) (1997); Craig v. Chater, 76 F.3d 585, 589 (4th Cir.1996) (holding that although not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.); Mitchell v. Schweiker, 699 F.2d 185 (4th Cir.1983) (holding a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.").

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the

factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6). Specifically, pursuant to 20 C.F.R. § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then consider the weight to be given to the physician's opinion by applying the following five factors: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 30 C.F.R. 404.1527(d)(2) (i-ii) and (d)(3)-(5).

Furthermore, Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine

11

whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir.1974).

The ALJ concluded the following with regard to the evidence and opinion evidence:

> Pursuant to 20 CFR 404.1527 and Social Security Rulings 06-3p, 96-6p and 96-2p, the undersigned has considered the medical opinions, which are statements from acceptable medical sources which reflect judgments about the nature and severity of the impairments and resulting limitations, of the claimant's treating physicians, evaluating physicians, and the state agency medical consultants. Specifically, the undersigned has considered the August 2007 opinion of Dr. Takacs that the claimant could work at that time. Dr. Takacs' opinion is supported by his treating relationship with the claimant, as well as his expertise in the field of neurology and the weight of the other evidence of record. Accordingly, his opinion has been accorded significant weight.
>
> The undersigned has also considered the July 2007 opinion of Dr. Benjamin, who indicated the claimant could not carry on any type of manual activity at that time or drive due to this cognitive slowness. However, this opinion is not supported by Dr. Takacs' August 2007 opinion that the claimant could return to work, and it is also inconsistent with the October 2007 consultative examination, which indicates that the claimant exhibited no perceptual motor difficulties or significant organic dysfunction and had only moderate difficulty in social and occupational functioning. Further, in his July 2007 treatment notes, Dr. Benjamin noted the claimant exhibited extremely good strength and an intact gait, and he did not cite any specific findings to support his opinion that the claimant could not perform manual activity. Because his opinion is inconsistent with the weight of the evidence of record, it has been accorded little weight.
>
> Consideration has also been accorded to Dr. Benjamin's September 2007 and October 2007 opinions that the claimant would likely be unable to maintain employment. However, Dr. Benjamin did not set forth any basis for this opinion, other than his belief that the claimant had a risk of seizures and exhibited some cognitive slowness. However, subsequent medical evidence shows the claimant's seizure disorder was stable with medication. Further, the October 2007 consultative examination revealed the claimant had no perceptual motor difficulties or significant organic dysfunction and had only moderate difficulty [in] occupational and school functioning.

12

> Accordingly, the undersigned has accorded Dr. Benjamin's opinions little weight, as they are not supported by the more recent medical evidence of record.
>
> Moreover, the undersigned has considered the March 2008 opinion of the claimant's treating physician that the clamant exhibited moderate work-related limitation in his ability to function due to his mental condition. Notably, the physician did not indicate that the claimant had severe work-related limitations due to his mental condition. The undersigned has accorded the physician's opinion some weight in finding the claimant can perform only simple, routine, and repetitive tasks.
>
> Significant weight has been accorded to the opinions of the state agency medical and psychological consultants as they are generally consistent with the weight of the other evidence of record.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the clamant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In sum, the above residual functional capacity assessment for limited light work is supported by the documentation of the claimant's seizure disorder and neuropathic pain, as well as the opinions of Dr. Takacs and the state agency medical and psychological consultants. While the claimant's allegation that he cannot perform manual labor is not supported by the objective findings of record, in light of his history of seizure disorder and neuropathic pain, the undersigned has limited the amount the claimant can sit, stand, walk, lift, carry, climb, and perform other postural activities. Additionally, the undersigned finds the claimant must avoid: unprotected heights, hazards, open flames, an sharp moving edges, with the exception fo more simple objects. Further, in light of the claimant's cognitive deficit and history of depression, the undersigned finds the claimant can perform only simple, routine and repetitive tasks. However, due to the aforementioned inconsistencies in the record as a whole, particularly the lack of significant clinical abnormalities in the recent treatment notes of record, the undersigned cannot find the claimant's allegations that he is unable to perform all work activity to be credible.

(Tr. 18-19).

The ALJ also set out a summary of Plaintiff's testimony at the hearing and found his allegations that he is unable to perform all work activity not credible The ALJ further stated:

> A review of the medical evidence of record indicates that while he has received treatment for his severe impairments since his alleged onset date, the clamant's symptoms are not as limiting as he has described. Specifically, there is no indication in the record that the claimant has experienced recurring seizures since July 2007. An August 2007 neurological examination was negative, revealing normal sensation, coordination, and gait, as well as full strength of the upper and lower extremities. Dr. Istvan Takacs, a neurosurgeon, noted he encouraged the clamant to return to work but that the claimant expressed concerns, such as leaning forward and exposure to high summer temperatures, neither of which Dr. Takacs believed were contraindications to him returning to work. In September 2007, Jeff Benjamin, DO, noted the claimant was doing well on anti-seizure medication and that while he used a cane for ambulation, the claimant exhibited an intact gait, full strength of the upper and lower extremities, and normal sensation and craneal nerves. In October 2007, Dr. Benjamin reiterated that the claimant was doing well on prescribed anti-seizure medications, and a November 2007 neurological examination was normal. Additionally, in treatment notes dated January 2008, Dr. Benjamin noted the claimant was doing well, with no recurring seizures. Moreover, in September 2009, Dr. Elliott Bettman did not indicate that the claimant exhibited any abnormalities, other than mildly reduced strength (4/5) of the extremities, and in December 2009, Dr. Bettman documented that the claimant expressed no new complaints. There is no indication in the record that the claimant sought any subsequent medical treatment for his seizure disorder.

(Tr. 16).

With regard to Plaintiff's neuropathic pain, the ALJ found that the treatment notes from October 2007 revealed Plaintiff reported improvement with medication, and a November 2007 physical revealed normal extremities. The ALJ further noted that Plaintiff had full strength of the upper and lower extremities, normal sensation, and intact gait. Physical examinations from April 2008 and December 2008 reveal the extremities were normal. The ALJ noted that in September 2009,

14

Plaintiff exhibited only mildly reduced strength of the extremities and there was no indication claimant subsequently sought or received treatment for his neuropathic pain. (Tr. 17). The ALJ further discussed the consultative examination by Dr. Charles W. Jackson in October 2007, who assessed Plaintiff with "depressive disorder, not otherwise specified, and dementia due to brain surgery, noting his psychological scores were consistent with cerebral hemorrhage in the right cerebral area" and assigned him a GAF score of 65 which "represents only moderate difficulty in social, occupation, or school functioning." (Tr. 17). The ALJ concluded that while Plaintiff was noted to have a depressed affect in December 2009, no additional mental abnormalities were documented and there "is no further indication that the claimant sought treatment for his depression." (Tr. 17).

The ALJ's decision with respect to Dr. Benjamin's opinion is supported by substantial evidence. The ALJ gave more weight to the notes and statements of Dr. Takacs, a neurosurgeon, that he found was supported by the record which he discussed in detail.[1] The ALJ did not completely ignore Dr. Benjamin's report but gave it little weight choosing to give more weight to that of Dr. Takacs. Therefore, there is substantial evidence to support the ALJ's decision in regard to this issue.

**GRIDS**

In Plaintiff's brief, he argued that the ALJ improperly relied on the Grids. The Defendant responded that the ALJ "merely considered the Medical-vocational Guidelines as a "framework at step five, which is proper where a claimant has a combination of exertional and nonexertional

---

[1] The ALJ stated that he also relied on the evaluations by state agency consultants. Such consultants are "highly qualified . . . experts in Social Security disability evaluation" whose findings the ALJ must consider as opinion evidence, 20 C.F.R. § 404.1527(f)(2)(i).

limitations." (Def.'s brief, p. 16-17). Plaintiff filed a reply brief in which he conceded that his argument regarding the Grids was "misplaced." Plaintiff asserts that "[t]he ALJ did, indeed, state that she used them only as a framework in light of Mr. Conner's inability to perform a full range of light work." (Plaintiff's reply brief). However, Plaintiff argues that the ALJ failed to account for all of the relevant non-exertional limitations of record and failed to provide a rationale for rejecting such limitations. Specifically, Plaintiff argues that the ALJ did not take into account his cognitive difficulties or fatigue as he testified to at the hearing.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

The ALJ found that Plaintiff could not perform his past relevant work. Therefore, the ALJ took testimony from a VE. The hypothetical posed by the ALJ to the VE was as follows:

> . . . Assume an individual 54 years of age. He completed high school. He can read at a ninth grade level. He can spell at the high school level. He can do arithmetic at the seventh grade level. He can sit six hours in an eight hour day with normal breaks, stand and walk six hour[s] in an eight hour day with normal breaks. He can lift 20 pounds occasionally which is defined as up to one-third of the work day, ten pounds frequently which is defined as up to two-thirds of the work day. He can occasionally climb stairs and ramps but cannot climb ropes, ladders, or scaffolds. He otherwise could perform postural at {inaudible} frequent. He must avoid unprotected heights, hazards, open flames, sharp moving edges, not including more simple objects such as kitchen knives. He performs simple routine repetitive tasks. Can you identify any jobs he could perform?

(Tr. 44).

The VE testified that Plaintiff could perform the job of a machine tender, ticket seller, and an inspector. (Tr. 45). Plaintiff's attorney asked the VE "[i]f a person was unable to, to perform a full day of light or sedentary work due to interruptions from fatigue or lack of memory, would they be able to do the work that you cited?" (Tr. 45). The VE responded "No."

In finding Plaintiff's residual functional capacity (RFC) that he can perform a range of limited "light"[2] work, the ALJ rejected his alleged non-exertional limitations of cognitive difficulties or fatigue to the extent testified to by Plaintiff. The ALJ found Plaintiff's testimony not credible. In reaching this conclusion, the ALJ set forth over three pages outlining why he found Plaintiff's testimony not credible, the results of the medical examinations, and Plaintiff's reported daily activities. As discussed

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. ..." 20 C.F.R. § 404.1567(b).

17

above, the ALJ found that Plaintiff had a severe impairment of cognitive deficit but presented substantial evidence to rebut these allegations of the degree of cognitive difficulties as alleged. However, the ALJ did consider the opinion of Plaintiff's treating physician that Plaintiff could exhibit moderate work-related limitations in his ability to function due to his mental condition but found the physician did not indicate that Plaintiff had severe work-related limitations due to his mental condition. Nevertheless, the ALJ accorded some weight to the physician's opinion by finding that Plaintiff could perform only simple, routine, and repetitive tasks. (Tr. 19). As to Plaintiff's allegation that he cannot perform manual labor, the ALJ found his allegation not supported by the objective medical evidence but, in light of his history of seizures and neuropathic pain, the ALJ limited Plaintiff in the amount he can sit, stand, walk, lift, carry, climb, and perform other postural activities. Consequently, there is substantial evidence to support the ALJ's hypothetical and the VE's response to satisfy the Commissioner's burden at step five.

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based upon the

18

foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

s/Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge

March 1, 2012  
Florence, South Carolina